Page number 23-5302 and 23-5303 David Little et al. v. City of Morristown TN et al. Oral argument, 20 minutes to be shared by appellants. 20 minutes for appellees. Mr. Knight, you may proceed. May I please look forward? Good afternoon, your honors. My name is Arthur Knight. I represent the Hamblin County defendants. Hamblin County is still a defendant in this case, and I believe former Sheriff Jarnagan is still a defendant in state law. This has this is solely about the qualified immunity of my four defendants, two on the denial of medical care claim and four on the failure to protect claim. Basically, I have read the Lawler case as instructed. I've read it several times. I've printed it out. And it's basically confirmation what I thought the law was in terms of what's clearly established and that you look at the time of the incident to determine an individual officer's liability. And in that situation, in this situation, I believe the little incident happened over a year prior to the decision in Brawner, another case that I happen to be involved in. And I think that based upon this court's jurisprudence and the Supreme Court jurisprudence with regard to clearly established as recognized in the Lawler case that anyone that although, yes, the standard did change for in Brawner. And, yes, Hamblin County is settled with that, like any other city or entity or whatever settled with a new standard. And that's fine. Individual officers, however, as recognized in Lawler, are entitled to fair notice if you apply the new standard. Judge Corker, and I'm not faulting him, applied the new standard to the individuals in his memorandum opinion. And under that, I think it's a recklessness standard taking into account the Kingsley influence that this court decided in Brawner. However, prior to the decision in Brawner, you know, these officers had to subjectively draw the inference. And as in Lawler, the court referred to used language such as, you know, to get an officer on the subjective part. It's a high bar and inferentially obvious. You can't rely on generic factors. And at a minimum, you're going to have to show that either any of these officers had a strong likelihood that this gentleman was going to die of a drug overdose. I don't believe that any of the officers could be charged with that. Which officers are you representing? I'm sorry. The county officers are Diana Brown, Anthony Smith, Austin Miller, and Chad McFarlane. Okay, so you have Smith and McFarlane. Yes. Smith? Well, go ahead, Judge Spahr. Well, I just want to ask about the failure to protect, because you mentioned that, but I don't see where the district court ruled on it. The district court did not rule on it. So couldn't you just move for QI below, and shouldn't the district court rule in the first instance on the failure to protect? You know, the district court did cite to Rule 56-F-2, which says that he's supposed to give Mr. Baker fair notice before he grants summary judgment. I guess I could do that. Otherwise, what are we reviewing? I don't understand what we can review on the failure to protect for the four of them. I interpreted, and maybe I made a mistake, I interpreted the failure to protect and the denial of medical care or failure to provide adequate medical care as one and the same. But they're clearly separate, right? Right. On the record that we have, which I think is pretty well established, there's no basis whatsoever for a failure to protect claim like an inmate-on-inmate violence. You might be right about that, but the district court should rule in the first instance, shouldn't it? I would agree with that, Your Honor. Okay, Judge Kethledge, I'm done. Thank you. Well, if I could pick up on it, you did not move for summary judgment on the failure to protect claim, did you? That's correct. I did not. Okay, so I fail to see how we could revert something that wasn't even presented to the district court. Well, my understanding of looking at the rule is that the district court could have granted summary judgment because they're not obligated to. No, they're not. It's clear in not sua sponte, raising an issue that you didn't present, and even had you presented it, it's not clear to me we can review something until the district court rules.  I guess going to the merits of some of this, Mr. Knight, as to McFarland, if we're looking at whether he's entitled to qualified immunity, I mean, the district court, as I understand it, found that the decedent's arms were purple, and he sprawled out. I guess I'm just wondering, why shouldn't your client get qualified immunity if his arms are purple and he's motionless in the manner he was? Well, the officer McFarland came on shift at 5 o'clock. Mr. Little was already asleep. All Mr. McFarland did was hand out sandwiches 20 minutes before Little was found without a pulse with purple arms. What about the inmate in the video that's kind of gesturing at him and clearly talking to McFarland? I mean, when you view both of those in the light most favorable to the plaintiff, how did the district court err? I think you would have to show that Officer McFarland or any of these officers substantially drew the inference that Mr. Little was in the throes of a drug overdose. And one, there's been no medical testimony as to McFarland or any of the county defendants that that's the case. Well, he died of something. He did. I'm not disputing that he died. The question is whether your client reasoned a jury could find that he was conscious of his dire condition. I don't think with this, certainly with someone coming on shift after he's already been booked, doesn't have any information other than he has a mat, a jumpsuit. He's asleep for 30 minutes and he doesn't want a sandwich and he's snoring loudly. I mean, how does that give anyone any clue whether an inmate said, hey, you know, I don't know what was said. No one knows what was said. If anything was said, McFarland doesn't vehemently disputes that an inmate would have any knowledge whatsoever that the inmate would say, hey, I know this guy. He's probably in a drug overdose. All right. Well, we could take up on rebuttal, I guess.  Okay. Anything further, Mr. McKnight? No, I see my time is well over a minute. Unless anyone has any questions, I do have three minutes on rebuttal. All right. Any further questions, Judge Kethledge? No, sir. All right. Let's hear from the other appellants, counsel. Thank you, Your Honor. May it please the court. My name is Dan Pilkington. I represent two of the defendant appellants, Officer Devin Gillette and Officer Matthew Johnson. I'm planning to focus my time today to discuss the denial of qualified immunity to Officer Gillette. If the court has any questions for any of the other claims, I'm certainly happy to address those. First, I think from reading the district court's memorandum opinion, it is pretty clear that like the district court in the Lawler matter, this court applied the wrong standard. If you look at the memorandum opinion, the court held, viewing the facts and drawing all reasonable inferences and the like most favorable to the plaintiffs, there is a genuine dispute as to whether the circumstances presented to Officer Gillette, McFarland, and Smith were clearly sufficient to indicate the need for medical care. That is in the section at page 19 that's looking at whether that's clearly established, and that is the Bronner standard. So the first issue for this court to resolve, I believe, is whether the district court applied the correct standard. It did not. Moving past that, the court should look at the standard that applied at the time of this incident, which was in March of 2020. That standard, as the court is aware and has set out in the Lawler decision at some length, is that there has to be evidence within the record upon which a reasonable juror could determine that Officer Gillette subjectively recognized that there was a significant likelihood that Mr. Little would die of a drug overdose. And the overdose itself, it did not occur until hours after this young man left the custody of Officer Gillette. So I'm not here to argue that the district court got the facts wrong, but under the facts as the district court found them, essentially that the deceit of Mr. Little, he appeared to be very intoxicated. He was mumbling at times. He was incoherent at times. I think the video itself is clear under Scott v. Harris. The court can look at the video and see everything that Officer Gillette saw. Mr. Little's symptoms, they kind of waxed and waned. The district court found that they deteriorated during the hour or so that he was in the presence of Officer Gillette. And I'm not here to dispute that, but it is clear that the decedent, he was able to walk around on his own. He specifically denied taking the medications that ultimately resulted in his death. The plaintiff has to show that he subjectively recognized this risk. There's no direct evidence of that. Officer Gillette's testimony is that he thought that this man was simply intoxicated, and that's reasonable. Anyone that were to watch the video of the interactions between Officer Gillette and Mr. Little, without the benefit of hindsight, would see a 23-year-old young man who was very intoxicated. Whether it was intoxicated by alcohol or intoxicated by some other drug is really not material for the purposes of this appeal. There's just simply nothing in the record to indicate that Officer Gillette drew some inference and then disregarded the fact. A plaintiff can prove over the kind of objections of an officer, and an officer says, I did not perceive that. Plaintiff, and I'm sure Mr. Baker will address that, can still prove through circumstantial evidence that it should go to a jury. But the cases where that has occurred, in order to clearly establish it and put these officers on notice at the time, are all in very, very severe cases. In fact, the only case relied upon by the district court for clearly establishing it was the Border v. Trumbull case. Number one, that's not an opinion that's published, so that in and of itself can't put him on notice. But the other cases we're talking about where a court has held that a failure to provide medical care or failure to render aid is so obvious that it should go to a jury, are situations like Griffith v. Franklin County, where someone is in jail and is going through withdrawals with delirium tremens. Border v. Trumbull, the case the district court relied upon, that was a situation where the inmate lost control of his bladder. He could not breathe. You had other inmates who tried to get the guard's attention and say, this guy can't breathe. And the guard's response was to say, F him. There was the case, the state of Carter v. Detroit, another one that's a heart attack case, where the gentleman was having chest pain for four hours and repeatedly requested help. Can I ask you, what's the bare minimum quantum of evidence that the plaintiff would need to present to show there's a genuine dispute as to Officer Gillette? That he realized there was a serious risk of harm? I think, given the fact that Officer Gillette handedly denies that, the video itself would have to be so clear that any and every person watching it would themselves recognize that this young man was in danger of... I watched it, and I mean, it is right. He checks him into the jail about 2.30, so he's at the hospital sometime before that, and before that's the encounter. He said when he's in the car and getting out that he stopped drinking at 4.30 in the morning. I mean, doesn't something else have to be going on? He doesn't smell of alcohol? Sure. Yeah, absolutely. And I think that Officer Gillette's testimony was not that he believed that he was only suffering from alcohol. I think there is, in the briefing itself, the reference to the fact that Gillette believed that he was intoxicated. But Gillette, the record does not say that Gillette believed he was intoxicated by alcohol. Because someone can be intoxicated by alcohol, or they can be intoxicated by various drugs. Can I ask you one other question, which is, you appealed state law negligence and gross negligence, but I didn't see you asserting immunity below on those claims. That's correct, Your Honor. How can we review them? I think the only way that this court would have jurisdiction to review those state law claims would be if the court were determined that the negligence claims were so intertwined with the federal claims analysis on qualified immunity. But how does that be? You haven't raised an immunity. Usually there's an immunity defense asserted when we do that. That's correct, and I did not brief any immunity issues on appeal, Your Honor. All right, Counsel, you started out by saying that the district court applied the wrong legal standard. That Judge Corker applied broader, and under the Lawler case, arguably he should have applied the pre-broader case. Normally, when a judge applies a wrong legal standard, doesn't analyze it under the correct standard. Don't we remand to the district court so that the district court, in the first instance, can apply the correct standard and make a ruling so that we have a ruling to review on appeal? I think the court certainly could do that. Why wouldn't that be the more appropriate remedy here, rather than us granting summary judgment on an issue that hasn't been ruled on by the district court? Well, I think like this court did, I believe in the Lawler decision just recently, it would be within the court's discretion to do that. And I think the court should do that because it would prevent the possibility of further delay if this issue comes back up on appeal again in six months. Okay. Officer Gillette did testify, did he not, that in his view, a combination of alcohol and prescription drugs could be deadly, could be a deadly combination? He did. So subjectively, he knew that what had occurred to Mr. Little might be life-threatening. Is that right? Well, yes, to the same extent that drinking alcohol can be life-threatening or driving a car can be life-threatening. There has to be, just because it is possible does not mean that there is a substantial likelihood that it would happen. Okay. You know, the other problem I have is there is testimony that Little said he stopped drinking alcohol at 4.30 a.m. And his intoxication did not dissipate. Normally with alcohol, alcohol dissipates with time. The intoxication doesn't get worse. And I mean, I think that's understood by about every police officer. And here, the fact that his symptoms get worse, Little's got him until 2.30 in the afternoon. And that's like totally contrary to common sense as to alcohol intoxication. So, I mean, isn't that circumstantial evidence that Little must have known that there was something going on other than alcohol intoxication? I don't think that Officer Gillette's testimony was that. Gillette, I'm sorry. Yeah, I'm sorry. I don't believe Officer Gillette's testimony in the record indicates that Officer Gillette believed alcohol was the only thing that was going on. I think it was. Well, I mean, I've watched relevant portions of the video, too. And he looks like he's in serious trouble to me. I mean, he's stumbling around. He's slurring his words. He's falling asleep. I mean, there's something serious going on here to me. All right. You just say that as a matter of law, that it shouldn't go to the trier of fact on this. And we ought to decide summary judgment under the pre-Bronner standard. Is that your position?  All right. Any further questions, Judge Thapar? No. OK. Let's hear from the plaintiff, Appellee's counsel. All right. Thank you, Your Honors. I appreciate the opportunity to be heard today. My name is Lance Baker, and I'm here today on behalf of the appellees, David and Ruth Ann Little, the parents of 23-year-old Tyler Little. I think where I would like to focus my attention, it seems, as to what standard is the court applying? Right. We know that the United States Supreme Court came out in 2015, the Kingsley case, and really delineated the difference between an Eighth Amendment convicted prisoner type claim as opposed to a Fourth Amendment pretrial detainee claim, which is what we have before us today. And ultimately, in Kingsley, the court said it was an excessive force case. I know we have a medical care claim here. But ultimately, in that case, they said that the pretrial detainee under the 14th Amendment did not ultimately have to prove— Doesn't Lawler bind us? I mean, it seems to me you're arguing around Lawler. Lawler says the pre-Bronner standard applies to conduct that occurred before Bronner. Here, the conduct occurred before Bronner. How are the officers supposed to know when there's a circuit split in the country as to what happens here? It seems preposterous that the officers would have to study the case law and figure that out. Right. Your Honor, Judge Stepar, thank you very much for your question. To answer that, the short on the front end, the answer is no. Lawler in no way binds this court or this panel on this particular case. In fact, I would like to make— It is a published opinion, Your Honor. Its holding is that before Bronner—I mean, conduct that occurred before Bronner, the pre-Bronner standard applies. That's the holding of the opinion, right? The only issue, Your Honor, is I would direct, and I don't know if Your Honors have reviewed these other Sixth Circuit cases, but just three months prior to Lawler coming out, you had the decision in the Sixth Circuit. Also, the date of incident was pre-Bronner, and the decision was three months prior to Lawler coming out. Was the issue squarely presented? Yes. Yes, it was. We don't have a holding in that case on the issue in which Lawler had its holding. I mean, we're not bound by the fact that a case might have certain facts and then a certain judgment. We're bound by holdings, and the pre-Lawler cases that I think you're referring to, none of them address the issue. Lawler is the first one that did. It's the only case that has a holding on the question we're talking about. Unless I'm mistaken about there being a holding on that same issue somewhere else, I don't see how we could do anything but apply Lawler here. Judge, I would respectfully disagree that in Brote v. Kenton, Gomez v. City of Memphis, and Howell v. NAFCAIR, the incident in which those cases were taken up, the individuals, just like Tyler Little, died pre-Bronner. But in each and every one of those cases, they applied the reckless disregard standard, even though the death predated the Bronner decision in 2021. Apparently, nobody presented to our court in those cases the argument and thus the issue that was decided in Lawler. So Lawler is the first one. That's my point about it has to be a holding. A reasoned conclusion on a point of law as opposed to just a constellation of facts accompanied by a certain kind of judgment. Right. I guess what I'm trying to ultimately say is when you have these three cases that applied one standard, that court did not mind whatsoever. They were going to apply the new standard, the good law. They said, we're not going to apply it. I know that. I know. Okay. I mean, I guess I've explained my concern about that argument. And I do understand that, Your Honor. I think one of the points that I would like to make about Lawler, distinguishing Lawler from the case that's here with Mr. Little, and the other three cases that were just decided in 2023 by this court, albeit different panels, there was nothing in Lawler where the court said Kingsley or any other Sixth Circuit case mandates us, just because it's an old case, we have to apply old law. Let me ask you, how can it be clearly established? And I get reckless disregard. It's odd to even talk about clearly established. But that's the world we live in. How can it be clearly established if no court has said it? So, Judge, I think that as early as 1972, the Sixth Circuit has held that where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such constitutes the deprivation of a constitutional due process. My point in saying that is to say the right itself has not changed. Tyler Little had the same right to medical care for a serious. But that's that's whether there's it's not whether it's clearly established, whether he has a constitutional right is question one. I know where you're. Yes. And I agree with that. Well, I think the court can ultimately analyze. I get it. I get it. Let me concede. Question one, he has the right to medical care. OK, I think the Hamlin County defendants even conceded that the right. But clearly established goes to what the law is at the time the conduct occurs. Right, correct, correct, correct. But if we can all agree that it was clearly established that somebody is required to get medical attention for an injury that is obvious and serious. Sure. And if they sufficiently right, the question is whether they drew the inference. Right. And we're just talking about the test at this point. We're talking. Right. I think that the court, if we it's a slippery slope, that if the court ultimately says that these officers, for instance, for I taste someone, I need to think in my mind, gosh, do I do I have actual knowledge of certain facts? Or if I don't provide medical care, am I just recklessly disregarding? I think we're putting too much on officers and quite frankly. That's the test. I mean, I may agree with you, but that's the test. That's the world we live in right now. And we can't disregard the Supreme Court. You literally we can't disregard holdings of our court, let alone the Supreme Court. Can I can I ask you a question about Gillette, which is let me let me tell you where I'm struggling. What's your best proposition for that? What case. Do you have that says the officers deliberately indifferent when he assumes the jail officials will follow their intake procedures? In other words, Smith should not. I mean, Smith, you have. It seems to me a better argument because Smith, there was a protocol he was supposed to follow. He was supposed to do a medical evaluation before he lets him into the jail. And at the both Gillette takes him. When I watched the video, I saw an officer that seemed to me to be doing a lot of things right. This is the way we want officers to act. He was very kind to the defendant or to the appellee. He took him even when he took him in the hospital. He didn't even handcuff him. He takes him in. There's hospital staff there. No one there says anything. I mean, they're much more experienced with this stuff. They would know. He then takes him to the jail where he should be able to trust. Right. Shouldn't an officer be able to trust that the jail follow their intake procedures? So and let me add one thing, and they should have medical staff there as well. They should have at least have a nurse on call. Right. They should. And they probably did. But that never happened. So first off, I would like to direct. I think it was Mr. Knight who said that Mr. Little was booked in. He was never booked in. And quite frankly, Mr. Gillette, it's been admitted through deposition testimony that Officer Gillette never even gave Hamlin County the proper paperwork in which to admit him to begin with. He told him about the guy's, you know, history of drinking until 430 and taking these medications and so on. I mean, my concern is the same one as Judge Sipar on these facts. What case shows that he was consciously disregarding a risk when he hands the decedent over to the custody of the jail, which has these procedures? So and I can get what case is the question here? Well, I don't have an exact case. I know we cited it in our brief as far as consciously disregard. And I just want to make clear to the panel that even if this panel chooses to not apply the new standard to a pre Bronner case, we still feel like under the facts that we have, the facts that Judge Porker found to be valid, that we can still actually meet the actual knowledge standard. OK, that's that might go. I mean, well, for qualified immunity, what's your best case that show? I mean, you seem to be saying you don't have a case that would put this defendant on notice in these circumstances. And it's a peculiar situation. He's not just leaving the guy on the sidewalk somewhere. He's handing them over, handing him over to the custody of somebody who's supposed to do a medical assessment, among other things. So what's your best case that would indicate to this officer in those facts that he is consciously disregarding the risk as opposed to some lesser degree of culpability? So in a case that I was involved in that I know that we cited, it was Paulson v. City of Alcoa that was decided in the Sixth Circuit, September 1st, 2021. And that this court is consistently held that an officer violates a detainee's unpublished, though, right? That was an unpublished opinion. Yes. And it postdates the incident. Right. So the officer would have to derive an unpublished case that postdates the incident in March of 2020. But I think we're I really do think that the court is conflating the two issues. We're talking in one instance about the right. The right has not changed. The day before Tyler Little changed the right to medical care for a serious and obvious. Look, ignore prong one, just do Pearson v. Callahan, ignore prong one, ignore prong two. Right. So if we're talking about any of the facts, I mean, the court said that he took him to the hospital. The medical personnel we have pointed out multiple times in the briefing that Judge Corker found valid. And we pointed it out to this court in our briefing. Ultimately, there was no medical opinion rendered. But what's what's your best case that the Constitution requires officers to get a medical opinion when they pull someone over or someone who's under the influence? I mean, in most cases, they take them to the jail. They don't even take them by the hospital. They take them to the jail and drop them off and let them detox. Right. And also to that point, Judge, the part an officer does not have to say, I know this detainee is overdosing. I know he has sickle cell anemia issues going on. Sure. So here are the officers at the hospital. Why can't you rely on the hospital workers? They're there. And then he takes him ultimately to the jail. Why can't you rely on the jail? In other words, we're putting an awful high burden here on an officer who's trying to exercise care, who's taken him to the hospital, who's then taken him to the jail and dropped him off and should be able to rely on the jail's policies that they would do what they say. I mean, I think in that regard, you have a pretty good case against Smith, because you should be able even everyone should be able to rely on that. He's going to do what the policy says he's supposed to do, which is do the medical intake. And if he does the medical intake properly, that's that's a different. You know, then you've got a you've got a good case against Smith. I think the problem you have with Gillette is he took him to the hospital, took him to the jail, should be able to rely on those to do their job. I mean, you're suing him for not doing their job and you're saying, well, we can sue him. But but the officer Gillette can't rely on your honor. I think when we're talking about going to the jail, I first off would implore if the court is not to look up anything dealing with Hamblin County. Officer Gillette is a city officer, but he worked in the cesspool of a dungeon, which the Hamblin County sheriff that that's his words, not mine. Officer Gillette knew that this jail was in a decrepit state, that it was understaffed, overpopulated. There's a lot. Are they not allowed? What was he supposed to do with him? I mean, look, that's you might have a great suit against the jail. I'm not disputing that. I'm saying what are you asking? What are you saying? Clearly establishes. Now you're saying it's clearly established that an officer cannot take an intoxicated inmate to an overcrowded jail or something of the sort. And all I'm saying is give me the case that allows you to get past summary judgment. Officer Gillette stayed at the jail until four forty one. He got Tyler Little to the jail at three forty two. OK, he could have stayed and made sure that he got some sort of medical attention. He did not. Even when he took him to the hospital, their own expert, Dr. Pope, even says that if Officer Gillette had admitted or asked anyone to evaluate Tyler Little, a medical opinion, not to phlebotomist that have a lab tech type name, she didn't understand anything. She relied on Officer Gillette that if he wanted to get somebody to give him medical help, then he would have. But he didn't do that. He didn't ask for a doctor. He didn't ask for a nurse. And he was taken into a jail that hasn't been certified by the state of Tennessee in nearly two decades, over two decades at this point. So what I mean, he's asking for a case, Mr. Baker. We that's the way it works with the qualified immunity. You know, what's what's the case that we can point to to reassure anyone? I mean, like on review of our decision, potentially that that there that this officer really should have known a lot better based on the facts of a prior case. Your Honor, there's plenty of cases that we cited to that ultimately, which one's the best one? Which one's closest to these facts? That's that's what we're trying to elicit. All I could tell to the court is I stand on the brief as far as that goes. That's fine. All right. We didn't cite it. I know for a fact we cited multiple cases that put this officer on fair notice beyond debate that if I see someone who can't breathe, who's sweating profusely, who's admitted that they've taken over six narcotics. Then what? Then what? You can't you can't check him into a jail. Is that the conclusion these cases offer, though? Judge Corker ultimately found Corker stated that Gillette's belief that little would receive a medical evaluation when he was booked into the jail. And thus he needed not take any action to have little medically examined and reasonably be inferred as circumstantial evidence that he deliberately disregarded the need for medical care and simply passed off the responsibility to jail. Wait a minute. Number one. And aren't you going to rely on this? Are you tanking your case against Smith? Number one, an initial intake evaluation says any inmate brought into the facility will be medically evaluated before being accepted into the facility. Aren't you going to argue that that that shows Smith was deliberate and different? Are you conceding Smith? I think that the case law and we talked about this in our brief to judge the part that just because a evaluation is not done, that does not mean that that defendant or that jail was deliberately indifferent, just that it was not dispositive of that one item. OK, it can go to whether or not that individual really disregarded that individual's need for medical care. You understand reckless disregard is not the standard after all. I would respectfully disagree. I understand that's where you lose if Lawler's if Lawler's right. I will say this. I don't I don't think that we lose. I think the worst case scenario that the court refers it back to Judge Corker to determine on a actual knowledge pre Lawler. Lawler didn't do that itself. As your friend points out on the other side, many of our cases don't do that when we say the district court applied the wrong standard. So usually when a district court applies the wrong standard, we just go ahead and apply the correct one and decide the case. I think if the court chooses to do that and not look at the case, this like brought the Kenton Gomez, the city of Memphis and how that were decided and where the individual died prior to Bronner cases were pending. Hold on. We heard you said this. I'm sorry. Just answer my question. Do you lose if Lawler is correct? I don't believe we do your honor. I believe we've in our brief page 27. We have we have laid out numerous facts that Judge Corker found that there to be a dispute. So I don't see how that can't be submitted to a jury even on the Lawler standard pre Bronner standard. We don't agree that that standard should be applied. We we believe the court has found good law. Why would they go back and say, you know what? We understand, you know, a year after we got it right. And now we're applying this right standard. But you know what? We're just we're still going to apply old bad law. I think that is a that's the way qualified immunity works. I mean, that is the unfortunate part for you of qualified immunity, right? Is that that's the way it works until we clearly establish it. Officers don't have to. But the right was clearly established. I think your honor is where we're just disagreeing. The right was still clearly established. The problem is the boundary of liability changed. It's like, you know, like it's a plaintiff can't come in and say, well, the Fourth Amendment rights been clearly established since 17. You know, whatever. That's not enough. It's the particular boundary that you're saying was violated must have itself been established. And if that boundary of liability changes after the officer's action, then then we don't. We look to the prior boundary, the one in place at the time he acted. And that seems to be the problem you have here. I think to that point as well, just looking looking forward and talking to the court today about this standard. If the Supreme Court in two, three, five years comes back and they very well could in one of these cases over the next several years, tinker again with the standard. I think that it's going to be a recurring theme where you're going to have cases where people have died in twenty, twenty four, twenty, twenty five, twenty, twenty six. And their cases are still pending, making it their way up to the Sixth Circuit. And that standard, the opposite would be true, right? The opposite would be true. If the Sixth Circuit reverses our Bronner standard, let's let's imagine a world where Smith and McFarland, you have a trial and you win. And the Sixth Circuit reverses us in a different case, your your judgment doesn't just evaporate. I would hope you agree with that. That happens all the time in the Sixth Circuit. The Supreme Court says, no, what you've been doing the last eight years is wrong. That could be in your benefit or to your detriment, but it doesn't affect judgments before that. I think a different analysis that I was thinking of before and what could I give the court to to try to have my point come across and one just because I'm a criminal defense attorney, too. So if you have Miranda v. Arizona and you have the Gideon case that talks about right to counsel and someone's arrested and those decisions come out, say, six months after, is the court really going to say, you know what? That happened after you didn't have a right to remain silent, you didn't have a right to counsel six months a day before when the alleged conduct occurred. I just think it's a little bit of a slippery slope and a dangerous precedent. And we're always going to be chasing that ball, especially. And we know that the Supreme Court at some point is going to touch on this again and it's going to be a recurring theme. So we're still going to have one. I think we understand that argument. Thank you. All right. Mr. Mr. Mr. Baker, you're out of time, I guess. Judge Kethledge, do you have further questions? No, sir. Judge, the bar? No, thank you. All right. Let's have rebuttal from the appellees or the appellants. I believe that's me, your honors. I think law or controls. Can you address Smith? I mean, he represents Smith. He had an obligation to do the medical intake. I know your friend on the other side says, well, I don't know what he would do. I didn't understand the argument regarding Smith, but I have trouble that Smith didn't do what he was required to do. Unlike Gillette, he doesn't do the things he's required to do. Why isn't that sufficient to create a genuine issue of fact? Under Lawler, I mean, I think what he didn't do was a jail policy and not federal law, state law, anything like that. And I think I heard Mr. Baker say that the failure to do an evaluation is not enough. Gillette told him about about Little's condition. And I mean, and he still doesn't do the evaluation. The only thing I read from the memorandum of opinion and the only thing I've ever read in the record in this case is, you know, a generic. Yeah, this is what he had. I still think it's a major leap. I mean, in Tennessee, you can arrest for intoxication. You can have alcohol or a drug prescription or otherwise. It doesn't mean that somebody's going to I thought he believed he'd been drinking and taking prescribed meds. And you're telling me they don't. And the policy says you won't accept him into the jail until he does a medical evaluation. I don't dispute that's what the policy says. So why if he didn't perform a medical evaluation, why isn't that sufficient? Well, none of these people are either legal scholars or medical doctors or anything. The fact that he did not perform a medical examination under federal constitutional law does not mean he substantially drew or substantiate a strong likelihood that Mr. Little was going to overdose. None of that. You can't shut your eyes either. I mean, he just checks him in without doing what the policy required. I mean, in other words, the existence of his of the policy and his failure to follow it would allow a juror to infer that he was consciously disregarding a risk. You know, especially after Gillette gives him the report he gave him. I think I spoke when I said in Mr. Baker pointed out that he had been booked. He had not been booked. I'm not sure that Gillette and Smith had any conversation with any degree of specificity. And I don't believe that either one of these gentlemen are medical doctors or physicians or whatever to determine what ultimately took Mr. Little's life and which is some sort of toxic intoxication. And, you know, if if that is there at six o'clock when they see he's not breathing, was the nurse there earlier? I mean, why don't you just call the nurse and do the medical intake before you let him in? I have no answer for that. If not following the policy of a medical examination when he first enters the facility is enough under which I do believe that it's clearly Lawler is the correct law. If that's enough under Lawler, Brawner clearly established standard, then that's enough. I don't believe it is. I think that if it was, Mr. Baker would have been easily able to find some medical. Whether it's enough would be a jury question, but why isn't sufficient evidence that he consciously disregarded a risk? In other words, as Judge Kefla pointed out a minute ago. Gillette warns him he knows he doesn't do the medical intake. He's consciously disregarding a risk. I know your friend on the other side said most it was reckless, but I'm just asking if we disagree with him for it to his benefit. Why isn't that? I don't think it gets you to makes the lead until the fact till it shows a strong likelihood of drug overdose. He sees these types of people all the time all day long, whether they're drunk on alcohol, drugs, whatever. Very few. I mean, this is like a very isolated incident. And, you know, he didn't do a medical evaluation. I'm not sure, you know, if it's and your answer. All right, Mr. Knight, you're out of time. Any further questions? Judge, judge the part. All right. Let's let's hear for the other council. Thank you. I really just want to close and pointing out two things and one in this line of business. I watch a lot of law enforcement videos. I'm sure that this court does to Officer Gillette, his demeanor, his interactions with this young man. He's concerned. He's compassionate. He's polite. This is the type of officer that we want out there on the streets. There is nothing in that video to indicate that he is acting with malice, that he has any ill intent, you know, that he that his actions constitute deliberate indifference. Number two, to to essentially hold Gillette liable, this court would basically be putting out a bright line rule that a law enforcement officer, when they're making a DUI stop, that it is is mandatory if the suspect indicates that he has been drinking and is on prescription medication, that it's essentially mandatory that that he be given medical care. And I've quoted some numbers in my brief about the number of DUI stops. I don't think the record indicates what percentage of individuals across the United States are on some prescription medication, but it is going to be hundreds of thousands of these incidents every year. And, you know, there is no case whatsoever that I'm familiar with that would have put Gillette on notice that his actions would be deliberately indifferent to the rights of Mr. Little. Even the cases cited, the case cited by the court, the Turnbull case, the Board of the Turnbull case, even in that case, the arresting officers were dismissed. There are many of these cases that deal with jail officials, but but there really just aren't any that deal with the arresting officers. In 2020, in March of 2020, there was no case that would put Mr. Gillette on notice that it was clearly established that his actions violated Mr. Little's rights. Plaintiff's counsel hasn't identified a case. The district court didn't identify a case because they're simply not a case. And under the pre-broader standard that must be applied, Officer Gillette is and was entitled to qualified immunity. All right. Any further questions, Judge Gatlin?  All right. Thank you, counsels. Case will be submitted.